# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KEVIN BEARY, Sheriff of Orange County, :
Florida, in his official capacity, :
individually, and on behalf of all others :
similarly situated, :
            :
        Plaintiff, :
            :
v. :      NO. 3:07CV35(MRK)
            :
ING LIFE INSURANCE AND ANNUITY :
COMPANY and ING FINANCIAL :
ADVISERS, LLC, :
            :
        Defendants. :

## MEMORANDUM OF DECISION

In response to perceived abuses of the federal class-action system in the securities law area,

Congress in 1995 passed the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. 104-67.

The PSLRA imposed procedural requirements on securities class actions, *see* 15 U.S.C. § 78u-4, and

also raised the pleading standards plaintiffs must satisfy in order to bring certain kinds of securities

class-action lawsuits in federal court. *Id.* Some plaintiffs responded to the restrictions imposed by

the PSLRA by filing their securities class actions in state court. As the Supreme Court observed in

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), "The evidence presented

to Congress during a 1997 hearing to evaluate the effects of the Reform Act suggested that this

phenomenon was a novel one; state-court litigation of class actions involving nationally traded

securities had previously been rare." *Id.* at 82 (citing H.R. Rep. No. 105-640, at 10 (1998)). In

enacting the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. 105-353,

Congress aimed to foreclose that tactic by providing that, under certain circumstances in securities

class-action lawsuits brought under state statutory or common law, defendants could remove the suits

to federal court. Also, the law required federal judges to dismiss the state-law claims if they alleged misrepresentation or non-disclosure of material information concerning the purchase or sale of a covered security, or that the defendant used any manipulative or deceptive practices in connection with the purchase or sale of a covered security. *See* 15 U.S.C. § 77p(b). This aspect of the law is known as "SLUSA preemption."

The claims of Plaintiff, Sheriff Kevin Beary, will be discussed in greater detail below, but the essence of his class-action lawsuit is that ING Life Insurance & Annuity Company ("ING"), which managed investments in mutual funds on behalf of participants in the Orange County, Florida Sheriff's Office Deferred Compensation Plan (the "Sheriff's Plan" or "Plan"), improperly accepted "revenue-sharing payments" from mutual funds and mutual fund advisers. These payments are called "revenue sharing" because they were calculated based on how much money Sheriff's Plan participants had invested in a given mutual fund at the time the revenue-sharing payment came due.

In his original Complaint, Sheriff Beary alleged that ING had committed fraud and engaged in a deceptive scheme in connection with the revenue-sharing payments. As the Sheriff has come to recognize, however, many courts have dismissed similar claims as preempted under SLUSA. *See, e.g.*, *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210 (C.D. Cal. 2006); *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342 (W.D. Pa. 2005); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005). In fact, a class-action lawsuit brought by Sheriff Beary in an Ohio federal district court, raising almost identical claims of fraudulent revenue-sharing payments, was recently dismissed for just that reason. *See Beary v. Nationwide Ins. Co.*, No. 2:06-CV-967 (S.D. Ohio Sept. 17, 2007).

Therefore, Sheriff Beary amended his Complaint in this action and made several concessions at oral argument specifically designed to avoid dismissal under SLUSA. As is discussed below, the Court concludes that considering his concessions and amended pleadings, Sheriff Beary has successfully pled around SLUSA. But in his efforts to evade SLUSA preemption at all costs, he has conceded away any viable claim and ended up with a lawsuit that does not state a valid cause of action. Because the Court agrees that the Amended Complaint fails to state a claim under *Federal Rule of Civil Procedure* 12(b)(6), the Court GRANTS Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint [doc. # 19].

## I.

Sheriff Beary is the sponsor of the Sheriff's Plan, which was established in 2001 to provide retirement benefits to employees of the Sheriff's Office.[1] The Sheriff's employees had previously participated in the Orange County, Florida Plan (the "County Plan"), which was itself formally adopted in June, 1977. When the Sheriff's Office separated from the County Plan, the Sheriff alleges that "[b]y implied or express mutual agreement between ING (and/or its subsidiaries and affiliates) and the Sheriff's Office," the current and all prior versions of the County Plan were deemed also to be part of the new Sheriff's Plan. Plaintiff's First Amended Class Action Complaint [doc. # 9] [hereinafter Am. Compl.] at 7. ING denies that the Sheriff's Plan existed, either independently or

---

[1] The facts in this section are taken from the Amended Complaint and documents incorporated by reference in that Complaint, such as the contract between ING and the Sheriff's Plan ("Contract"). The Court may consider the Plan document and the Contract on this Motion to Dismiss because these materials are clearly integral to Sheriff Beary's Complaint and have been incorporated by reference therein. *See OBG Tech. Servs., Inc. v. Northrup Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490 (D. Conn. 2007) (citing *Collier v. Aksys Ltd.*, No. 3:04CV1232(MRK), 2005 WL 1949868 (D. Conn. Aug. 15, 2005), *aff'd* 179 Fed. Appx. 770 (2d Cir. 2006)).

as a continuation of the County Plan, before 2001. *See* Defendants' Memorandum in Support [doc. # 20], at 1-2. Happily, that is not a dispute that this Court can or need resolve at this stage.

As was true under the County Plan, the Sheriff's Plan designated ING as an approved institution to provide investment products to the Plan.[2] *See* Contract, Am. Compl., Ex. C. ING remains an investment provider to the Plan, although the Sheriff transferred part of the Plan's assets to another investment provider in late 2006. Sheriff Beary filed this lawsuit as a putative class action in January, 2007, although there has been no motion to certify the class as of yet.

Generally speaking, employees participating in the Sheriff's Plan could choose to allot their investment in various ways. One possibility was the Separate Account, a group variable annuity contract that offered employees the opportunity to invest, albeit indirectly, in mutual funds selected from a list provided by ING. Am. Compl. at 4. The Separate Account is defined in the Contract as follows:

> An account which buys and holds shares of the Fund(s). Income, gains or losses, realized or unrealized are credited or charged to this account without regard to other income, gains or losses of [ING]. [ING] owns the assets held in a separate account and is not a trustee as to such amounts. These accounts generally are not guaranteed and are held at market value. The assets of such accounts, to the extent of reserves and other contract liabilities of the account, shall not be charged with other [ING] liabilities.

Contract, Am. Compl., Ex. C, Endorsement EGISA-IA. The parties agree that the Separate Account is, and has been at all relevant times, registered as an investment company under the Investment

---

[2] According to the Sheriff's Amended Complaint, ING Financial Advisers, LLC provided plan documents and administrative services, while ING Life Insurance & Annuity Company provided the annuity contracts themselves and related services. *See* Am. Compl. at 14. The Court will refer to Defendants collectively as "ING."

Company Act of 1940, making it a "covered security" for purposes of SLUSA. *See* 15 U.S.C. § 77p(f)(3) (referencing 15 U.S.C. § 77r(b)).

Investment through the Separate Account was indirect because ING, rather than the Plan participants, actually owned the shares of the underlying mutual funds; the participants would designate what percentage of their monthly investment they wanted to allot to any of a number of "sub-accounts" of the Separate Account, each of which invested in a particular mutual fund. *See* Am. Compl. at 6-7. ING used the current value of the underlying mutual fund shares to determine how many "record units" the participant's investment would purchase, with the record units reflecting the amount ING would eventually owe to the participant, based on the performance of the underlying mutual fund.[3]

In his original Complaint, the Sheriff alleged that "[a]t some time, ING began investigating and ultimately implemented and maintained a scheme whereby Investment Advisors made revenue sharing payments to it based upon a percentage of the plan participants' assets invested in the mutual funds through ING." Plaintiff's Class Action Complaint [doc. # 1], at 12. He further alleged that "ING implicitly or explicitly made it a condition to including a mutual fund family's funds in the platform of investments offered to plan participants that the mutual fund family pay ING revenue sharing on a majority or all of its funds offered by ING." *Id.* Sheriff Beary claimed that the payments were fraudulent because the "amounts bear no relationship whatsoever to the cost of providing the services or a reasonable fair market value for the services. . . . [I]n an open market,

---

[3] Sheriff Beary refers to record units as "accumulation units," but the Court will use the term "record units," as that is how they are referred to in the Contract. The parties also dispute the nature of the record units; ING claims they are mere bookkeeping notations, while the Sheriff alleges they are in the nature of shares, constituting an identifiable *res*. However, the Court need not resolve that dispute in this decision.

those services should be provided between unrelated parties on an annual per plan participant basis, not on a percentage of assets basis." *Id.* at 13-14. Finally, he argued that a class action was necessary because "[c]lass members are almost entirely unaware of ING's breaches of fiduciary duty, such that they will never bring suit individually." *Id.* at 16.

Faced with a recently filed motion to dismiss based on SLUSA preemption in the Sheriff's case in Ohio, Sheriff Beary took the opportunity preemptively to amend his Complaint in this action for the avowed purpose of avoiding SLUSA preemption. To that end, the Sheriff removed all references to a fraudulent "scheme"; to the fact that the services for which ING allegedly received the revenue-sharing payments purportedly had little or no fair market value; to the inference that increased charges to the mutual funds by ING necessarily reduced the value of the Plan participants' investments; and to any attempt to hide from Plan participants material information regarding the revenue-sharing payments. *See* Defs.' Mem. in Support [doc. # 20], Ex. D (redline version of Amended Complaint). The Sheriff also acknowledged that because the contract between ING and the Sheriff's Plan did not discuss revenue-sharing payments specifically, there is no claim that ING breached the Contract by receiving and retaining the revenue-sharing payments. *See* Am. Compl.; Defendants' Notice of Filing of Hearing Transcript [doc. # 46], Ex. A [hereinafter Transcript], 12:21-24, 82:18-19 ("[H]ere we are not complaining about breach of an express contractual duty.").

However, in his Amended Complaint, Sheriff Beary continues to allege that it was improper for ING to receive and retain payments from at least some of the mutual funds that ING offered to Sheriff's Office employees through the Separate Account. The Sheriff's current theory of impropriety (explained further at oral argument) is that ING held the investments in the Sheriff's Plan in trust for the participants in the Plan (or that ING acted as the employees' agent in making investments for

them) and that ING breached the fiduciary duty it owed the Plan (as trustee or agent) when it profited from Plan investments, in any way and regardless of the harm or lack thereof to the participants. To the extent that ING did not breach its fiduciary duty, Sheriff Beary also sues for unjust enrichment, claiming it would be unfair to permit ING, as a fiduciary, to retain the revenue-sharing payments. Under either theory, then, Sheriff Beary seeks disgorgement by ING of all revenue-sharing payments ING has received from mutual funds.

## II.

*Federal Rule of Civil Procedure* 8(a) requires only that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." In considering a motion to dismiss under *Federal Rule of Civil Procedure* 12(b), the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). Further, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and alteration omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).

The Supreme Court recently sought to clarify the pleading requirements a complaint must meet in order to avoid dismissal in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955. There, the Supreme Court explicitly repudiated an oft-quoted description of the standard for motions to dismiss, namely the language in *Conley v. Gibson*, 355 U.S. at 45-46, explaining "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 127 S. Ct. at 1969. According to the Supreme Court in *Twombly*, that "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

The Second Circuit examined *Twombly* in a recent decision in which the circuit noted that *Twombly*'s "conflicting signals create some uncertainty as to the intended scope of the [Supreme] Court's decision." *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007). Nevertheless, the Second Circuit concluded that "[a]fter careful consideration of the [Supreme] Court's opinion and the conflicting signals from it that we have identified, we believe that the Court is not requiring a universal standard of heightened fact pleading." *Id.* Instead, *Twombly* requires a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Id.* at 157-58. Thus, to survive a motion to dismiss under "the plausibility standard of [*Twombly*], a conclusory allegation concerning some elements of a plaintiff's claim might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement." *Id.* at 158.

### III.

ING argues that Sheriff Beary's Amended Complaint should be dismissed for a variety of reasons, the foremost of which is that the Sheriff's claims are preempted under SLUSA. Specifically, SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of a material fact in connection

with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b). Here, both parties agree that the Separate Account and the underlying mutual funds are "covered securities" for the purposes of SLUSA. The parties disagree about whether the Complaint, as amended, satisfies both the "in connection with" and the fraud requirements of SLUSA preemption.[4]

Sheriff Beary first argues that the revenue-sharing payments are not "in connection with the sale or purchase of a covered security," because the payments were due either quarterly or annually and were based on the amount of money *held* in each mutual fund, rather than being owed at the time of purchase or sale. Even assuming this characterization of revenue-sharing payments is accurate, the Court believes that the Supreme Court's decision in *Dabit*, *supra*, forecloses the Sheriff's argument. There, the Supreme Court held that SLUSA applies to holders of covered securities, not just purchasers or sellers. As the Supreme Court noted, "[t]he presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment. A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose . . . ." *Dabit*, 547 U.S. at 86.

Based upon *Dabit*, the court in the Sheriff's Ohio case concluded that conduct nearly identical to that alleged in the Sheriff's original Complaint was "in connection with the sale or purchase of a

<hr>

[4] In his Post-Hearing Brief, Sheriff Beary argues for the first time that the state-entity exemption in SLUSA makes the statute inapplicable to this case. *See* Plaintiff's Post-Hearing Brief [doc. # 44], at 15. Because the Court has decided that SLUSA does not apply to the Amended Complaint for other reasons, the Court need not, and does not, resolve this late-tendered issue, which ING has not had an opportunity to brief.

covered security." *See Nationwide*, No. 2:06CV-697, slip op. at 8. This Court agrees, and rejects the Sheriff's contention that "[i]n order for an alleged fraud to 'coincide' with a securities transaction, the misrepresentation or omission must have either altered the prices at which securities were traded or caused persons to buy, sell or refrain from selling securities when they otherwise would have acted differently." Pl.'s Mem. in Opp'n [doc. # 29], at 10; *see also In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210; *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342; *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451.

Turning then to the fraud requirements of SLUSA preemption, it is certainly true that the original Complaint was replete with allegations of fraud and references to a revenue-sharing "scheme." However, Sheriff Beary was careful to remove all such language from his Amended Complaint. Plaintiff's counsel also made clear at oral argument that the Sheriff's claims are not founded upon any misrepresentation or omission of any material fact. *See* Transcript, 3:14-18, 33:1-3 ("[B]ad faith is not a necessary, scienter is not a necessary, element of this in any way, shape or form."). In fact, Sheriff Beary acknowledged that the Contract Prospectuses provided by ING, which detailed the fees associated with the Separate Account, provided (at all material times) full and complete disclosure of the revenue-sharing payments. *See id.* at 12:25 to 13:4. Thus, for example, the May 2002 Contract Prospectus expressly stated as follows:

> [ING] may receive compensation from each of the funds or the funds' affiliates based on an annual percentage of the average net assets held in that fund by [ING]. The percentage paid may vary from one fund company to another. For certain funds, some of this compensation may be paid out of 12b-1 fees or service fees that are deducted from fund assets. Any such fees deducted from fund assets are disclosed in this Fund Expense Table and the fund prospectuses. [ING] may also receive additional compensation from certain funds for administrative, recordkeeping or other services provided by [ING] to the funds or the funds' affiliates. These additional payments

are made by the funds or the funds' affiliates to [ING] and do not increase, directly or indirectly, the fees and expenses shown above.

May 1, 2002 Prospectus, Defs.' Mem. in Support [doc. # 20], Ex. C at 9 n.1.

In addition, Sheriff Beary represented to the Court at oral argument that he is not claiming that the Separate Account is worth less than it should be, *see id.* at 24:16-18, or that "Plaintiff or any other class member bought, sold, or refrained from selling any security based upon anything that ING did or did not disclose regarding revenue sharing." Plaintiff's Memorandum in Opposition [doc. # 29], at 11; *see also* Transcript, 25:5-8 ("They bought the, you know, they invested the money the way they were supposed to, they only took out the specific expenses that they were supposed to. *We are not claiming anything was worth less than it should have been*.") (emphasis added). Furthermore, Sheriff Beary seeks only the revenue-sharing payments, limited to fees paid by mutual funds or mutual fund advisers to ING for the maintenance of investments in the mutual funds, rather than 12(b)1 fees more broadly. *See* Transcript, 69:20 to 70:7.

Finally, the Sheriff agreed at oral argument that under no circumstances would he assert that ING's disclosures were inadequate in response to ING's arguments that either the statute of limitations or Sheriff Beary's acquiescence in ING's conduct barred the suit. *See id.* at 4:17 to 5:6. Sheriff Beary was equally explicit in his Memorandum in Opposition, stating that

> [t]his case . . . does not allege, depend upon or imply that ING misrepresented or failed to disclose anything for any purpose, let alone for the purpose of causing unwary investors to rely on such misrepresentations or omissions in making investment decisions. . . . Specifically, Plaintiff does not allege that any disclosures, or lack thereof, concerning revenue sharing payments altered the value of the underlying mutual fund shares or of the accumulation units . . . . Nor does Plaintiff assert that the value of the annuities or mutual funds were misrepresented in any other manner.

Pl.'s Mem. in Opp'n [doc. # 29], at 8-9. Nor is there any allegation that ING improperly steered Plan participants to funds that provided revenue-sharing payments to ING, or that ING encouraged the participants to hold onto investments in such funds in any way.

Instead, Sheriff Beary argues that "he only seeks recovery of the revenue sharing payments actually received by ING, because such payments rightfully belong to Plaintiff and the Class as they derived from their assets." *Id.* at 9. Thus, despite his full and long-standing awareness of ING's revenue-sharing practices, and despite the fact that he waited over five years to challenge those known practices in court, the Sheriff contends that the law prevents ING from retaining those payments because only the express permission of a beneficiary absolves a fiduciary from liability for what Sheriff Beary calls ING's "self-dealing" in receiving and retaining revenue-sharing payments from mutual funds in which Plan participants' funds were invested. *See* Transcript, 27:23-25 ("The only compensation [ING]'s entitled to is that which the principal or the beneficiary of the trust has explicitly agreed to pay."). In short, the Sheriff claims that Florida law required his express consent, not mere acquiescence, to the revenue-sharing payments, and he has effectively acknowledged that if acquiescence (as opposed to express consent) is sufficient under Florida law to relieve a fiduciary of liability in the circumstances of this case, his claim must necessarily fail.

ING objects to the Sheriff's reformulation of his claims and asserts that "[t]he Plaintiff's Amended Complaint constitutes a blatant attempt to obscure his allegations in hopes of avoiding preemption of his state law claims under SLUSA." Defs.' Mem. in Support [doc. # 20], at 14. ING also reminds the Court that "SLUSA requires that the court look beyond the face of plaintiff's pleadings," *id.* at 14 (quoting *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043, 1048 (N.D. Cal. 2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003)), in determining whether a claim should be considered

barred under SLUSA. According to ING, even the narrowed claim laid out in the Amended Complaint should fall under SLUSA. For under ING's reading of Florida law, "[a]bsent some allegation of nondisclosure or inadequate disclosure, plaintiff's claims are barred by acquiescence, waiver, estoppel, and the statute of limitations. Thus, if the Court were to find that plaintiff has stated a viable claim for breach of fiduciary duty, plaintiff's claims are barred by SLUSA." Defendants' Supplemental Memorandum of Law [doc. # 45], at 10.

The key issue is whether, despite the Sheriff's best efforts, the Amended Complaint may still be read to allege "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security" or a "manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b)(1). The Court concludes that it does not. Despite the language in the original Complaint sounding in fraud, schemes, and manipulation, Sheriff Beary has now refashioned his claim and expressly disavows any reliance on any misrepresentation, manipulation, scheme, or fraud. It is certainly true that the Court must look to the substance of the Sheriff's claims for purposes of SLUSA preemption. *See, e.g.*, *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 (3d Cir. 2005) ("No matter how an action is pleaded, if it is a covered class action involving a covered security, removal is proper."); *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 702 (S.D. Ill. 2007) ("The fact that Plaintiffs have chosen to disguise what amount to claims of securities fraud as claims for negligence and breach of fiduciary duty under state law is not enough to evade preclusion of those claims under SLUSA."). But it is equally true that the plaintiff is the master of his claims, even when, as here, the plaintiff is openly and admittedly seeking to plead around existing barriers, jurisdictional or otherwise, to his claims. *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). As the Second Circuit has noted on numerous

13

occasions, "It is well established that an amended complaint ordinarily supercedes the original, and renders it of no legal effect." *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (quotation marks and alteration omitted); *accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *Int'l Controls Corp. v. Vesco* 556 F.2d 665, 668 (2d Cir. 1977). In the complaint that is currently operative and controlling – the Amended Complaint – Sheriff Beary no longer alleges any conduct covered by SLUSA, and he has expressly represented to the Court that he will not assert any misrepresentation or fraud in response to any defenses raised by ING. In light of the articulation of the Sheriff's claim in his Amended Complaint and all the representations and concessions made at oral argument,[5] the Court concludes that SLUSA does not preempt the claims now asserted by the Sheriff in the Amended Complaint.

## IV.

### A.

As a first step in his breach of fiduciary duty claim, Sheriff Beary must establish that a fiduciary relationship exists between the Sheriff's Plan and ING. The Sheriff alleges that ING acted as either a trustee or an agent for the Plan, either of which would have created the necessary fiduciary relationship. The Sheriff's Amended Complaint provides little in the way of factual support for his

---

[5] At no point has Sheriff Beary attempted to rescind the concessions made by his counsel at oral argument, and the Court notes that under *United States Trust Co. of New York v. Shapiro*, 835 F.2d 1007 (2d Cir. 1987), and *Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994), he would not be permitted to do so. As no class has yet been certified, the only party currently before the Court is Sheriff Beary. *See* Transcript, 44:8-13 ("I mean, your Honor, certainly at this point, I only represent the sheriff of Orange County, Florida. I would like to represent these other folks and at some point, if we make it to a class certification hearing [then] we'll discuss whether it's appropriate for us to represent the other folks as well."). Therefore, this Court need not, and does not, decide what effect, if any, the Sheriff's concessions and representations have on the other putative members of the class.

allegations that ING acted as either a trustee or an agent for the Plan in managing investments in the Separate Account. Sheriff Beary focuses primarily on the language in the Sheriff's Plan and the Contract that states that the sums held under the Plan or the Contract are to be used for the exclusive benefit of the participants and their beneficiaries.[6] The only other statement in the Amended Complaint regarding the alleged fiduciary relationship between the Plan and ING is the Sheriff's statement that

> ING is an agent and/or trustee and, thus, a fiduciary of Class members and their plan participants under state law as to their investments (accumulation units and/or the underlying mutual fund shares) because (a) they are plan assets, and (b) ING holds them (legal title and physically) for the benefit of class members and their plan participants.

Am. Compl. at 12.

ING denies that it acted either as trustee or agent, and asserts that the relationship between the parties was purely contractual. In particular, ING notes that an Endorsement to the Contract explicitly states that the Separate Account is not a trust.[7] ING also points out, and the Sheriff does not dispute, that the Separate Account, which was established in Connecticut, is governed by

---

[6] *See* Am. Compl. at 8-9; Sheriff's Plan, Am. Compl., Ex. A at 7, § 5.02 ("All amounts of Compensation deferred under this Plan, all property and rights which may be purchased with such amounts and all income attributable to such amounts, property or rights shall be held in trust (or a custodial account or annuity contract described in [IRS] Code Section 401(f)) for the exclusive benefit of Participants and their Beneficiaries."); Contract, Am. Compl., Ex. C, Endorsement E98-CDA-HO ("[A]ll amounts maintained under this Contract, and any amounts withdrawn or paid from this Contract with respect to such an employer are required to be utilized for the exclusive benefit of Participants and their beneficiaries in accordance with Section 457(g) of the Internal Revenue Code of 1986.").

[7] Contract, Am. Compl., Ex. C, Endorsement EGISA-IA ("An account which buys and holds shares of the Fund(s). Income, gains or losses, realized or unrealized are credited or charged to this account without regard to other income, gains or losses of the Company. *The Company owns the assets held in a separate account and is not a trustee as to such amounts*. . . .") (emphasis added).

Connecticut General Statute § 38a-433.  That section places conditions on the ability of domestic life insurance companies to establish annuities paid in fixed or variable amounts.  One of those conditions is that "amounts allocated to a separate account in the exercise of the power granted by this section shall be owned by the company, and the company *shall not be, nor hold itself out to be, a trustee* with respect to such amounts."  Conn. Gen. Stat. § 38a-433(a)(v) (emphasis added).  As to agency, ING argues that the Contract includes no specific language indicating the intent to create an agency relationship, nor does the Sheriff point to any.  ING also argues that the Plan participants did not have any control over which mutual funds ING offered through the Separate Account, the technical details as to how money could be allocated to the various sub-accounts (such as the number of sub-accounts a participant could select, or how often a participant could change sub-accounts or allocation percentages), or any other aspect of ING's internal affairs.

Though a close question, the Court believes that it should not definitively resolve these issues without further development of the factual record.  Among other things, whether a trust was created may well be influenced by the proper characterization of the record units and whether, as ING asserts, they are mere bookkeeping notations reflecting ING's contractual obligations to Plan participants based on the performance of those underlying shares, a determination this Court cannot make on the basis of the Amended Complaint (and its attachments) alone.  Furthermore, all parties recognize that ordinarily whether an agency relationship exists presents a question of fact.  *See Goldschmidt v. Holman*, 571 So. 2d 422, 424 (Fla. 1990).  Therefore, for purposes of this Motion to Dismiss, the Court will assume (without deciding) that ING, as alleged, acted as a trustee or agent in connection with the Plan.

**B.**

Even assuming that there was a fiduciary relationship of some sort between ING and the Plan or its participants, the question still remains whether under Florida law, the Sheriff's admitted and knowing acquiescence in ING's revenue-sharing program over so many years bars his current suit. Sheriff Beary, as noted above, has conceded that he had full and adequate disclosure of all material facts regarding the revenue-sharing program at all material times. However, he claims that under Florida law, his express approval was required before ING could retain the revenue-sharing payments – in short, that knowing and long-term acquiescence is not enough as a matter of law.[8] The parties agreed at oral argument that this is purely a question of law and is not dependent on any facts. Therefore, it is appropriate for resolution on a motion to dismiss. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

The Court's review of Florida law does not support the Sheriff's position. Instead, it reveals that acquiescence, in the ordinary sense of passive acceptance, will in fact bar a lawsuit, even where the plaintiff claims a breach of fiduciary duty. *See, e.g.*, *Asher v. Gene Snyder & Co.*, 311 So. 2d 155, 156 (Fla. Dist. Ct. App. 1975) ("[A] broker can neither acquire an interest or make a profit in a transaction in which he is employed unless his principal knows and gives his consent *or acquiescence*.") (emphasis added); *Chisman v. Moylan*, 105 So. 2d 186, 189 (Fla. Dist. Ct. App. 1958) (same). The cases with factual patterns most similar to the present case all support this

---

[8] The Court notes that all parties agree that the substantive law of Florida governs these claims, as the Contract signed by the parties explicitly states, "This contract is delivered in Florida and is subject to the laws of that jurisdiction." Contract, Am. Compl., Ex. C at 1; *see Constellation Power Source, Inc. v. Select Energy, Inc.*, 467 F. Supp. 2d 187, 203 (D. Conn. 2006) ("Connecticut law gives effect to a choice of law expressed in a contract, except in limited circumstances.") (citing *Pokorne v. Gary*, 281 F. Supp. 2d 416, 419 (D. Conn. 2003)).

proposition. In *Gordon v. duPont Glore Forgan Inc.*, 487 F.2d 1260 (5th Cir. 1974), for example, Mr Gordon sued duPont, his brokerage firm, for failing to notify him that his account was undermargined, which was a breach of duPont's fiduciary duty. The trial court found that duPont had indeed breached its fiduciary duty on July 14, 1971, but also determined that Mr. Gordon had become aware of the under-margined state of his account a "reasonable period of time" thereafter. *Gordon*, 487 F.2d at 1261. Tellingly for the Sheriff's claims in this case, the Fifth Circuit stated: "As we read [Florida case law], under Florida law a customer who knows of his broker's breach of duty and takes no action will be barred from bringing suit." *Id.* at 1262. In that case, the court explained, Mr. Gordon did not "seasonably complain" of a known breach. *Id.* Instead, he "knew of the breach of duty and he acquiesced. Such behavior must bar his recovery here." *Id. Gordon*'s holding covers this case exactly. Notably, moreover, Mr. Gordon (unlike Sheriff Beary) had waited only a few months before confronting his broker about the under-margined state of his account. Nevertheless, that brief delay was sufficient under Florida law to bar his claim.

The Fifth Circuit in *Gordon* based its reasoning in part on an earlier case, *Hayden, Stone Inc. v. Brown*, 218 So. 2d 230 (Fla. Dist. Ct. App. 1969), in which a Florida court had held a brokerage firm not liable for an alleged breach of its fiduciary duty, because the plaintiff investor was aware of all material facts and failed to complain. In *Hayden, Stone*, the court stated as follows:

> Even if there had been a breach of duty, which there was not, plaintiff by repeatedly accepting confirmations and accounts, which fully disclosed all aspects of the transactions, elected not to rely upon that breach. Moreover, by failing seasonably to make complaints of facts of which she was informed, she would in any event be barred from her late assertion of wrong done unto her by the partnership or corporation.

*Hayden, Stone*, 218 So. 2d at 237. Similarly, in *Brent v. Smathers*, 547 So. 2d 683 (Fla. App. 1989), the Florida Court of Appeals held that a

> beneficiary who consents to, *acquiesces* or concurs in, or ratifies with full knowledge, an act of a trustee in allocating trust assets may, on the ground of waiver or estoppel, be precluded from later objecting to the impropriety of the act and from holding the trustee liable for any resulting loss.

547 So. 2d at 685 (emphasis added); *see also Nachwalter v. Christie*, 611 F. Supp. 655, 664 (S.D. Fla. 1985) ("Under Florida law, a failure to object results in an estoppel if the person [such as a trustee] was under an affirmative duty to speak.").

Thus, having reviewed the relevant case law cited by the parties, the Court holds that Sheriff Beary's delay of almost six years in bringing this lawsuit in the face of complete disclosure by ING of all material facts regarding its receipt of revenue-sharing payments constitutes acquiescence sufficient to bar the Sheriff's lawsuit under Florida law. As the court put it in *Gordon*, "[U]nder Florida law a customer who knows of his broker's breach of duty and takes no action will be barred from bringing suit." *Gordon*, 487 F.2d at 1262.

Sheriff Beary has no adequate response to this consistent and highly relevant body of Florida case law. His primary contention, as already noted, is that as a result of ING's heightened duties to the Plan as fiduciary, "acquiescence" is insufficient a matter of law.[9] Sheriff Beary claims that "an actual contract," in the sense of an explicit agreement permitting revenue-sharing payments, was required under Florida law and that his acquiescence is not sufficient to permit ING to retain the

---

[9] Black's Law Dictionary, for example, defines "acquiescence" as "[a] person's tacit or passive acceptance; implied consent to an act. . . . The result is that binding legal effect is given to silence and inaction. Acquiescence, as a principle of substantive law, is grounded in the concepts of good faith and equity." Black's Law Dictionary 23 (7th ed. 1999).

revenue-sharing payments. *See* Transcript, 16:19-23. For support, the Sheriff leans heavily on the Restatement (Second) of Trusts, which says:

> The rule stated in this Section [prohibiting self-dealing by trustees except with the beneficiary's consent] is applicable whether the act or omission of the trustee was requested by the beneficiary or the beneficiary merely consented to it without having made such a request. *The mere fact, however, that the beneficiary does not object to a deviation from the terms of the trust is not consent to such deviation*.

Restatement (Second) of Trusts § 216(1), comment a (1959) (emphasis added). The Restatement also provides that where the trustee has an adverse interest in the transaction, a beneficiary may hold the trustee liable if the transaction is not fair and reasonable to the beneficiary, regardless of whether the beneficiary had previously given his consent. *Id.* § 216(3). Sheriff Beary cites to a Florida statute, § 607.0832, that he claims codifies the "fair and reasonable" requirement of § 216(3) of the Restatement (Second) of Trusts.

The Court disagrees with the Sheriff's interpretation of Florida law for several reasons. First, the Restatement § 216(1) is expressly founded on a "deviation from the terms of the trust." This is apparent both from the text itself and from an examination of the explanatory illustrations provided by the Restatement. Yet, here, it is undisputed that ING did not violate any of the terms of the Plan or the Contract in accepting revenue-sharing payments. That is why Sheriff Beary does not claim that ING breached any contractual obligation. There is no indication in the Restatement or elsewhere that § 216(1) was intended to apply to a situation where it is undisputed that the alleged trustee did not violate the terms of any trust instrument.

Second, although Sheriff Beary claims that Florida courts have embraced § 216(1) of the Restatement (Second) of Trusts, he cites no relevant statutory or case law to support his assertion. For example, the Sheriff points to *Keye v. Gautier*, 684 So. 2d 210 (Fla. Dist. Ct. App. 1997), for

the proposition that express consent is required from a beneficiary. There, however, the beneficiary

sued under Florida Statute § 737.403, which requires a trustee to receive express authorization from

a court before engaging in self-dealing. Section 736.0102 of the Florida Statute, which delineates

the scope of the Florida Trust Code, states explicitly, "This code *does not apply* to . . . trusts for the

primary purpose of paying . . . pensions, or employee benefits of any kind . . . ." (Emphasis added).

Thus, the statute is inapplicable here and *Keye* is irrelevant.

Indeed, the only Florida case – state or federal – citing specifically to § 216(1) of the

Restatement (Second) of Trusts is *Brent v. Smathers*, 547 So. 2d 683. But that decision favors ING's

position, not the Sheriff's, as the Court explained above. Moreover, no decision of a Florida court

of which the Court is aware has ever backed away from the holdings of *Brent*, *Gordon*, or the other

cases cited above that under Florida law a customer who knows of an alleged breach of duty and

takes no action will be barred from bringing suit. *Gordon*, 487 F.2d at 1262. In short, Sheriff Beary

has pointed to no relevant case law, and the Court has found none, to support his position that only

express consent by a beneficiary, rather than informed acquiescence, is sufficient under Florida law

to bar his claims in this action.

In that regard, the Court notes that Sheriff Beary relies heavily on two out-of-state cases, one

from California and one from Indiana, in support of his contention that express consent of a

beneficiary is indispensable. But those cases do not support the Sheriff's argument either. The

California case, *Cagnolatti v. Guinn*, 140 Cal. App. 3d 42 (1983), is explicitly premised on the

particular requirements of the California Civil Code, and nowhere mentions the Restatement

(Second) of Trusts. The Indiana case, *Stowers v. Norwest Bank Indiana, N.A.*, 624 N.E.2d 485 (Ind.

App. 1993), is similarly irrelevant, in that the factual setting of *Stowers* is materially different from

that alleged by Sheriff Beary in this case. Specifically, the plaintiffs in *Stowers* claimed to have been intentionally deceived by defendants, and the plaintiffs used this deception as proof of lack of acquiescence. Furthermore, the court found that the trustees had violated the terms of the trust instrument. Finally, and importantly, the court acknowledged that under the Indiana Code (which governs the case) acquiescence by a beneficiary is sufficient where that beneficiary, like the Sheriff, is aware of all material facts. *See id.* at 488 ("Either concurrence in the act or acquiescence will release the trustee from liability for breach of trust."). *Stowers* thus supports ING, not Sheriff Beary.

Third, although Sheriff Beary points to Florida Statute § 607.0832 as supposedly implementing an absolute "fair and reasonable" requirement on alleged self-dealing, the Court disagrees with his reading of that statute. It is apparent from the face of the statute that the "fair and reasonable" requirement applies only to self-dealing by corporate directors, and then only when there has not been approval of the transaction by a majority of disinterested board members or shareholders. *See* Fla. Stat. § 607.0832. Furthermore, to the extent relevant, Florida case law establishes that even acquiescence on the part of board members or shareholders is sufficient, regardless of the fairness or reasonableness of the transaction, provided that, as here, the plaintiff was fully aware of all material facts regarding the director's conduct. *See Chipola Valley Realty Co. v. Griffin*, 115 So. 541, 542 (Fla. 1927) ("It appears to be well settled that the right to relief against a director of a private corporation for breach of trust is barred by laches, where the complainant, with full knowledge of the material facts, waits an unreasonable time before seeking relief."); *see also Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1260 (S.D. Fla. 1994) ("There was no evidence that the Plaintiff unreasonably rested on its rights to assert its claim for a constructive trust, thus the doctrine of laches does not apply.") (citing *Wadlington v. Edwards*, 92 So. 2d 629 (Fla. 1957)); *Head*

*v. Lane*, 495 So.2d 821, 825 (Fla. App. 1986) ("As applied to a shareholder's derivative action, the defense of laches applies where a shareholder, with knowledge of wrongful acts on the part of the directors or a majority of the shareholders, stands by for an unreasonable length of time without taking steps to set the acts aside or otherwise interfere, and rights are acquired by others.").

In sum, the Court concludes, as the Fifth Circuit held in *Gordon*, that "under Florida law a customer who knows of his broker's breach of duty and takes no action will be barred from bringing suit." *Gordon*, 487 F.2d at 1262. That is precisely what is alleged here. Contrary to Sheriff Beary's claim, there is no requirement of express consent, at least where, as here, there is no claim that the alleged fiduciary breached or violated the terms of any contract or trust instrument. Accordingly, having recast his claims to avoid SLUSA preemption, Sheriff Beary has wound up with no viable breach of fiduciary duty cause of action.

## V.

Finally, Sheriff Beary argues that even if ING committed no breach of its fiduciary duty to the Plan, the Sheriff may nevertheless recoup, on a theory of unjust enrichment, the revenue-sharing payments ING received. This claim is not well developed in the Sheriff's Amended Complaint, which states only,

> As an agent and/or trustee, and thus, a fiduciary, ING must make restitution of any enrichment which it is unjust for it to retain, even if it committed no breach of fiduciary duty. Under the circumstances, it is unjust for ING to retain the revenue sharing payments even if it did not breach any fiduciary duties as to Class members and their plan participants. Accordingly, ING must make restitution to Class members for the amount of the revenue sharing payments it received plus compounded interest to the date of restitution.

Am. Compl. at 14. Sheriff Beary devoted virtually all of his effort in his briefs to the Court to the issue of fiduciary duty and the alleged breach of that duty. ING likewise focused little on the unjust

enrichment claim, arguing principally that there can be no claim of unjust enrichment because the parties' Contract covered the general subject matter of the Sheriff's claim. Defs.' Mem. in Supp. [doc. # 20], at 30-31.

Under Florida law,

> [t]he elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876 (Fla. Dist. Ct. App. 1996) (quotation marks and alteration omitted) (quoting *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994)). Although there are, of course, instances in which factual disputes must be resolved before a court can rule on a claim of unjust enrichment, Florida courts have been willing to dismiss claims of unjust enrichment on the pleadings where the plaintiff has failed to allege the requisite elements of the cause of action. *Id.* at 879; *see also N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. Dist. Ct. App. 2000). Florida courts have also been consistent and emphatic in holding that "the law will not imply a contract where a valid express contract exists." *Harding Realty, Inc. v. Turnberry Towers Corp.*, 436 So. 2d 983, 984 (Fla. Dist. Ct. App. 1983) (citing *Hazen v. Cobb*, 117 So. 853 (Fla. 1928)); *see also Williams v. Bear Sterns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998) ("It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails.") (quotation marks omitted); *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984) ("It is well settled

that the law will not imply a contract where an express contract exists concerning the same subject matter."); *In re Estate of Lonstein*, 433 So. 2d 672, 674 (Fla. Dist. Ct. App. 1983) (same).[10]

The question then becomes how specific a contract must be before it will be determined to cover the subject matter of the plaintiff's unjust enrichment claim and thus bar the cause of action. Florida courts have generally held that a high level of specificity is not required. Thus, in *In re Phillip Watts Enterprises*, *supra*, for example, a lessor who maintained the exterior of the leased property sought repayment of a portion of its costs from the lessee. Although the court recognized that the lessor might otherwise have a valid claim of unjust enrichment for certain of the expenses, it noted that under the contract, the lessee undertook responsibility for some of the maintenance and the accompanying costs, and other aspects of the maintenance, which the lessor had provided, were not mentioned at all. Because the issue of maintenance and the related expenses was addressed in the contract, the court dismissed the lessor's claim for unjust enrichment, even regarding those fees not specifically discussed in the contract. *See* 186 B.R. 735, 740 ("It seems likely that the facts of this case would meet the above elements [for unjust enrichment], at least for some of the fees charged. However, Florida courts have consistently held that the law will not imply a contract where a valid written contract exists dealing with the same subject."). Similarly, in *Williams*, *supra*, the plaintiff sued because she claimed she had received poor investment advice from Bear Sterns and certain individual investment advisers. The court upheld the dismissal of her unjust enrichment claims against those defendants with whom the plaintiff had entered into a contract, without going

---

[10] As another court in the District Court of Appeal of Florida has noted, "To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms – 'quasi contract,' 'unjust enrichment,' 'restitution,' 'constructive contract,' and 'quantum meruit.'" *Commerce P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) (citations omitted).

into any detail at all as to the nature of the contracts.  *See* 725 So. 2d at 400.  Similarly, the District

Court of Appeal of Florida denied a claim of unjust enrichment for legal services rendered in *In re*

*Estate of Lonstein*, *supra*, where the attorney had previously signed a contract setting a maximum

fee to be charged, despite the fact that unforeseen, and unforeseeable, circumstances had resulted in

the attorney having to put many more hours into the case than originally anticipated.  *See* 433 So.

2d at 674 ("*Any* proof of an express agreement between the parties as to the compensation to be paid

for the services rendered would defeat rather than sustain an action based upon quantum meruit.")

(emphasis added).

In light of these cases, it would appear that the Contract between the Plan and ING, which

addresses the fees the Plan owes ING for managing the Plan participants' investments, covers the

subject matter of the Sheriff's claim for disgorgement of the revenue-sharing payments, and as such

is barred.  The absence of an express contractual provision regarding revenue-sharing payments, or

prohibiting ING from accepting any additional fees from third parties, does not remove the revenue-

sharing payments from the general subject matter covered by the parties' Contract.

Sheriff Beary points to *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp.

2d 1319 (S.D. Fla. 2004), in support of his position.  But the facts of that case are materially different

from those alleged by Sheriff Beary in this case.  In *Excess Risk Underwriters*, the parties disputed

which insurance contracts Lafayette was required to send to Excess Risk for administration.  One

group of policies was clearly covered by a preexisting agreement between the parties.  A second

group of policies, however, was not mentioned in that contract.  The court acknowledged that under

Florida law the existence of a valid and enforceable contract governing the general subject matter

of the unjust enrichment claim would bar such a claim.  *See id*. at 1345.  However, the court denied

summary judgment on Excess Risk's claim of unjust enrichment with respect to the latter group of policies, because the parties' preexisting agreement was "limited in its scope" to the first group of policies. *See id.* at 1345-46. In that case, then, the two groups of policies were entirely separate, such that an agreement regarding one could not reasonably be understood as incorporating an agreement regarding the other. Indeed, the court pointed out that the parties had made separate arrangements for the transfer of cases that were not part of the parties' preexisting agreement. *See id.* at 1346. Here, on the other hand, ING collected the revenue-sharing payments in connection with the Plan participants' investments and the underlying mutual fund shares. In short, the Court concludes that the other cases previously mentioned, and especially *In re Phillip Watts Enterprises*, are more analogous to this set of facts than *Excess Underwriters*. On the basis of the allegations of the Amended Complaint, the Court concludes that the parties' Contract encompassed the subject matter of Sheriff Beary's unjust enrichment claim and thus bars it.

Even assuming that the existence of the parties' Contract does *not* bar the unjust enrichment claim, the Sheriff faces a more fundamental problem with his unjust enrichment claim. The problem for Sheriff Beary derives from the first required element of an unjust enrichment claim under Florida law – that the plaintiff has conferred a benefit on the defendant. The Court notes that neither in his Amended Complaint nor his briefs to the Court has Sheriff Beary even attempted to identify the benefit he or the Plan participants conferred on ING. That the Sheriff has studiously avoided the threshold requirement of an unjust enrichment claim under Florida law is telling. For, as pleaded, the Sheriff cannot satisfy that requirement.

If the "benefit conferred" is defined as the participants' investments with ING, the claim for unjust enrichment necessarily fails. The reason is that the Sheriff has admitted that ING complied

with the terms of the Contract and that the value of the participants' investments, in the form of the Separate Account, has not been in any way affected by ING's receipt of the revenue-sharing payments. *See* Transcript, 24:16-18; 25:5-8. In other words, ING has done exactly what it said it would do under the Contract, and the Sheriff and the Plan participants have received precisely what they bargained for. In Florida, "an unjust enrichment cannot exist where payment has been made for the benefit conferred." *Commerce P'ship*, 695 So. 2d at 388 (quotation marks omitted).

In *N.G.L. Travel*, for example, the travel agency sued Celebrity Cruises for unjust enrichment, claiming that the cruise line intentionally charged passengers inflated port charges in an attempt to reduce the travel agency's commissions, which were based on the amount of the passengers' fares minus the port charges. The court affirmed the trial court's dismissal of N.G.L.'s claim, however, on the ground that the plaintiff failed to show that Celebrity had retained a benefit from the travel agency without paying for it. As the court stated, "The travel agency received exactly what it bargained for. Unjust enrichment cannot exist where payment has been made for the benefit conferred." 764 So. 2d at 675. As a Florida court stated in *American Safety Insurance Service v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 2007), "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." 959 So. 2d at 331-32. Such is the case here, as well.[11]

---

[11] The court in *N.G.L.* also noted that the plaintiff "failed to demonstrate how the port charges it claims to be inflated and improperly collected would have otherwise been attributed to cruise fare, i.e., if the port charges were 'deflated' the excess would not have been charged at all." 764 So. 2d at 675. The Sheriff is in a similar position here, given his concessions that the value of the Separate Account was not affected by ING's receipt of the revenue-sharing payments and that ING did not improperly steer Plan participants to funds that provided revenue-sharing payments to ING or encourage participants to hold onto investments in such funds.

On the other hand, if the "benefit conferred" is understood to be the revenue-sharing payments themselves, the Sheriff is faced with a different, but no less insurmountable, obstacle. For in that case, the benefit would not have been conferred by the Plan participants, but rather by the mutual funds and their advisers. Florida courts have held that "[t]he plaintiffs must show they *directly conferred* a benefit on the defendants." *Griggs*, 959 So. 2d at 331 (emphasis added). In *Peoples National Bank*, for example, Peoples National sought to recover from other banks with which it had offered a loan to a land developer alleged overpayments of principal and interest. The trial court dismissed Peoples National's claim for unjust enrichment, and the court of appeals affirmed, stating,

> Here, the plaintiff, Peoples National, could not and did not allege that it had *directly conferred* a benefit on the defendants, the other participant lenders. In actuality, if any benefit was conferred upon each participant lender in the form of overpayments, it could only have been conferred upon them by Southeast [the lead bank in charge of managing the loan and distributing the payments to the participant lenders], not Peoples National.

667 So. 2d at 879 (emphasis added). *Peoples* is on all fours with this case, in which the Sheriff is complaining about payments made to ING not by the Plan participants themselves, but by third parties.

Therefore, regardless whether the benefit conferred on ING is understood to be the Plan participants' original investments or the revenue-sharing payments provided by mutual funds and their advisers, the Sheriff cannot satisfy the threshold requirement of an unjust enrichment claim under Florida law. Accordingly, ING is entitled to dismissal of Sheriff Beary's unjust enrichment claim.

**VI.**

For the reasons stated, the Court GRANTS ING's Motion to Dismiss Plaintiff's First Amended Class Action Complaint [doc. # 19].  **The Clerk is directed to dismiss this action and close this file.**

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: November 5, 2007.**